UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Equal Employment Opportunity
Commission

    v.                                             Civil No. 11-cv-454-SM

Windmill International, Inc.


**O R D E R**

On behalf of charging party Nancy Hajjar, the Equal Employment Opportunity Commission ("EEOC") has sued Windmill International, Inc. ("Windmill") for violating Hajjar's rights under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991.  Before the court is the EEOC's motion for a protective order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure ("Federal Rules"), that would forbid Windmill from enforcing a subpoena duces tecum it served on Hajjar.  In the alternative, the EEOC moves to quash the subpoena, pursuant to Rule 45(c)(3).  Windmill objects.  For the reasons that follow, the EEOC's motion is denied.


**Background**

Hajjar complained to the EEOC about Windmill's decision to terminate her employment, alleging that she was discharged because of an actual or perceived impairment of her circulatory

or cardiovascular system.  On Hajjar's behalf, the EEOC sued Windmill.  Hajjar has not intervened and, as a result, is not a party to this suit.

The EEOC and Windmill are subject to a protective order that, among other things, provides that "[f]or purposes of this action, documents within the possession, custody or control of Charging Party Nancy Hajjar shall be deemed to be within the possession, custody, or control of the EEOC, [and that] the EEOC's obligation to respond to discovery requests shall extend to such documents."  Stip. & Prot. Order (doc. no. 11) ¶ 11.

In June of 2012, Windmill served Hajjar with a subpoena duces tecum in which it sought eleven categories of documents. For example, Windmill asked Hajjar to

> produce any and all documents which in any way relate[d] to [her] attempt(s) to find work or otherwise mitigate [her] alleged damages from April 12, 2010 to the present,

Pl.'s Mot. for Prot. Order, Ex. A (doc. no. 12-1), at 4.  It also asked her to

> produce any documents related to any communication between [her] and Defendant Windmill International or Defendant's agents or employees from June 2008, to the present.  (Defendant does not seek production of communications between [Hajjar] and the EEOC's counsel of record in this matter),

id.  The eleven categories of documents Windmill seeks from Hajjar are, generally, a subset of the documents listed in a

request for production propounded by Windmill on the EEOC in March of 2012.[1] The EEOC produced some of the requested documents, but also objected to portions of Windmill's request.

## Discussion

The EEOC now moves for a protective order that either forbids enforcement of the subpoena Windmill served on Hajjar or quashes it. The EEOC argues that the subpoena is unduly burdensome because it demands documents from Hajjar that it, the EEOC, has already provided to Windmill in response to its request for production. It further argues that the documents Windmill seeks by subpoena are duplicative of the documents it has already produced. In the EEOC's view, "the stated purpose of the Subpoena is to bypass the EEOC and put Hajjar,

---

[1] Essentially foreshadowing the demands stated in the subsequent subpoena, Windmill asked the EEOC to produce, among other things:

> any and all documents which in any way relate[d] to Hajjar's attempt(s) to find work or otherwise mitigate her alleged damages from April 12, 2010 to the present,

Pl.'s Mot. for Prot. Order, Ex. B (doc. no. 12-2), at 6. It also asked the EEOC to produce

> any documents related to any communication between Hajjar and Defendant or Defendant's agents or employees.

id. at 7.

personally, to the trouble of articulating and perhaps litigating objections, rather than meeting and conferring with the EEOC to attempt to resolve any disputes on the merits." Pl.'s Mot. for Prot. Order (doc. no. 12), at 3.[2] Windmill objects, arguing that: (1) the EEOC lacks standing to bring a motion to quash a subpoena served on Hajjar, who is a non-party to this action; (2) the fact that the EEOC has already produced the documents demanded by the subpoena does not prevent it, i.e., Windmill, from seeking those same documents from Hajjar; and (3) the EEOC's claim that the subpoena imposes an undue burden on Hajjar is entirely unsupported. The EEOC replies, arguing that: (1) it has standing to move to quash, under Rule 45(c)(3); (2) even if it lacks standing to file a motion under Rule 45(c)(3), it has standing, as a party, to move for a protective order under Rule 26(c); and (3) the subpoena at issue runs afoul of the limits on discovery imposed by Rule 26(b)(2)(C).

The Federal Rules provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). That said,

---

[2] Stated another way, the EEOC's argument is that "the Subpoena is unlikely to yield any benefit other than circumventing the normal process of resolving discovery disputes among parties." Pl.'s Mot. for Prot. Order, at 5-6.

4

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> **(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> **(iii)** the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).  Accordingly,

> [a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
>> **(A)** forbidding the disclosure or discovery.

Fed. R. Civ. P. 26(c)(1).  Rule 45, which deals specifically with subpoenas, provides in pertinent part:

> On timely motion, the issuing court must quash or modify a subpoena that:
>
> . . . .
>
> **(iv)** subjects a person to undue burden.

Fed. R. Civ. P. 45(c)(3).

5

Ordinarily, the court would begin with Windmill's argument that the EEOC lacks standing to move to quash a subpoena served on Hajjar, due to Hajjar's status as a non-party.  There is, indeed, a fair amount of case law on the question of the EEOC's standing to challenge subpoenas served on non-parties in cases it has brought on their behalves.  And, the parties appear to have uncovered much of that case law.  But, notwithstanding the EEOC's assertion that "courts generally recognize that the EEOC has standing to move to quash a subpoena directed to the charging party,"[3] Pl.'s Reply (doc. no. 19), at 4, only one of the cases on EEOC standing cited in the parties' briefs involved a non-party to an EEOC enforcement action, such as Hajjar, who was also an EEOC charging party. Rather, the non-parties in those cases were entities such as educational institutions charging parties had attended, see, e.g., EEOC v. Danka Indus., Inc., 990 F. Supp. 1138, 1141 (E.D. Mo. 1997), subsequent employers of charging parties, see, e.g., EEOC v. Serramonte, 237 F.R.D. 220, 222 (N.D. Cal. 2006), those who had provided

---

[3] For that proposition, the EEOC relies on two cases in which the subpoenas at issue were not directed to charging parties.  See EEOC v. 704 HTL Operating, LLC, Civ. No. 11-845 BB/LFG, 2012 WL 1216142, at *1 (D.N.M. Apr. 3, 2012) (defendant directed subpoena to charity that had provided services to charging party); EEOC v. Orig. Honeybaked Ham Co. of Ga., Inc., No. 11-cv-02560-MSK-MEH, 2012 WL 934312, at * (D. Colo. Mar. 19, 2012) (defendant directed subpoenas to prior and subsequent employers of charging parties).

health care to charging parties, see, e.g., id., or other persons who possessed confidential information about charging parties. Moreover, in the one case involving a subpoena served on a non-intervening charging party, EEOC v. Premier Well Services, LLC, the court assumed with deciding that "the EEOC [had] standing to request that the subpoena on [the charging party] be quashed," No 4:10cv1419 SWW, 2011 WL 2198285, at *1 (E.D. Ark. June 3, 2011) (citations omitted), but denied the motion to quash on the merits, see id. at *1-2.

In short, neither party's brief cites any opinion in which a court has decided the legal question that is central to Windmill's standing argument, i.e., whether the EEOC has standing to move to challenge a subpoena served on a non-intervening charging party. The court's own research on this point has been similarly fruitless. Rather than attempting to blaze a new trail through an interesting but complex area of the law, this court, like Judge Wright in Premier Well, will simply assume that the EEOC has standing to move for the relief it seeks.

The EEOC's basic argument is that, pursuant to Rule 26(c)(1)(A), Windmill should be forbidden from enforcing the subpoena it served on Hajjar because production of the documents demanded by the subpoena would impose an undue burden on her.

7

In the alternative, it argues that the subpoena must be quashed, pursuant to Rule 45(c)(3)(A) for the same reason. But, the EEOC also says that it has already solicited from Hajjar the same documents Windmill seeks from her. If the EEOC has put Hajjar to the trouble of assembling the documents Windmill has subpoenaed, it is difficult to see how the subpoena imposes much of a burden on Hajjar. For its part, the EEOC offers neither evidence nor argument to show any particular burden on Hajjar, much less an undue burden. To be sure, it will require some effort from Hajjar to produce the documents Windmill seeks, but it is worth bearing in mind that the purpose of this case is to litigate Hajjar's claims against Windmill. In any event, Rule 26(c)(1) does not entitle the EEOC to an order forbidding Windmill from enforcing its subpoena on Hajjar, and Rule 45(c)(3)(A) does not entitle the EEOC to an order quashing the subpoena.

    The EEOC also argues that Windmill's subpoena constitutes unreasonably cumulative or duplicative discovery within the meaning of Rule 26(b)(2)(C)(i). Under that rule, "the court must limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less

expensive." Fed. R. Civ. P. 26(b)(1)(C). Windmill's subpoena is not <u>unreasonably</u> cumulative or duplicative of the requests for production that Windmill served on the EEOC. As Judge Wright explained in <u>Premier Well</u>:

> "There is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party." [<u>Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Co.</u>, No. 4:08MC00017 JLH,] 2008 WL 4853620[,] at *2 [(E.D. Ark. Nov. 6, 2008)]. "In many cases, it is important to obtain what should be the same documents from two different sources because tell-tale differences may appear between them; and in many cases when a party obtains what should be the same set of documents from two different sources a critical fact in the litigation turns out to be that one set omitted a document that was in the other set." <u>Id.</u>

2011 WL 2198285, at *1; <u>cf.</u> <u>EEOC v. Dolgencorp, LLC</u>, No. 1:09CV700, 2011 WL 1260241, at *15 (M.D.N.C. Mar. 31, 2011) (declining to find that discovery requests directed toward EEOC were propounded for an improper purpose, even though defendant had previously served charging parties with subpoenas seeking the same information). Judge Wright's reasoning in <u>Premier Well</u> is persuasive.

There is another way to look at this issue that also favors Windmill's position. The EEOC's entire argument rests on its having solicited documents from Hajjar and having submitted some of those documents to Windmill. But, the EEOC has identified

nothing about the subpoena that would have run afoul of Rule 26(b)(2)(C)(i) if Hajjar had intervened in the case and had been served with a request for production seeking the same documents demanded by the subpoena.  Moreover, in such a circumstance, Hajjar could not have successfully resisted a request for production by arguing that she should not have to produce documents to Windmill because she had already produced them to the EEOC during the course of its investigation of her claim.  For its part, the EEOC has given no good reason why Hajjar's decision not to intervene should have the result of placing Windmill at its mercy with respect to obtaining documents from the person whose claims the EEOC is litigating and who will benefit should the EEOC happen to prevail in this action.

   Finally, the EEOC appears to argue that the subpoena Windmill served on Hajjar somehow goes against the letter or the spirit of the protective order in this case.  It does not.  Paragraph 11 of the protective order certainly allows Windmill to seek Hajjar's documents from the EEOC, and obligates the EEOC to produce those documents if requested.  But, that paragraph does not preclude Windmill from seeking documents from Hajjar, nor does it protect her from producing them.

**Conclusion**

For the reasons explained above, the EEOC's motion for a protective order, document no. 12, is denied.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

August 20, 2012

cc: Peter Bennett, Esq.
    Frederick B. Finberg, Esq.
    Elizabeth A. Grossman, Esq.
    Justin Mulaire, Esq.
    Robert D. Rose, Esq.